Dear Linda Lamone
You have requested our opinion concerning the wording of the oath completed by a voter who casts an absentee ballot. Your question is prompted by the Court of Appeals decision in Lamone v. Capozzi,396 Md. 53, 912 A.2d 674 (2006), which held that a statute authorizing voting in advance of election day violated the Maryland Constitution. In the course of that decision, the Court construed Article I, § 3, the constitutional provision authorizing absentee ballots, to pertain only to "`absent' voters, not those who find the voting day to be inconvenient."
In our opinion, the absentee ballot oath should track the language of Article I, § 3 — that is, the voter should be required to swear or affirm that he or she will be absent or will be unable to vote in person on election day. If an amendment of Article I, § 3 passed by the General Assembly at its 2007 session is ratified by the voters, the absentee ballot forms should be amended to track the amended provision or any legislation governing absentee ballots consistent with that provision.
 I Background
A. Constitutional Basis for Absentee Voting
The Maryland Constitution recognizes two methods of exercising the right to vote. The first method, by casting a ballot in person, is expressly provided for in Article I, § 1. That provision defines who may vote and where he or she may vote:
 All elections shall be by ballot. Every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which he resides at all elections to be held in this State. A person once entitled to vote in any election district, shall be entitled to vote there until he shall have acquired a residence in another district of ward in this State.
The second method of voting, sanctioned by the current State Constitution since 1918,[1] is by absentee ballot. The Constitution does not mandate an absentee ballot, but authorizes the General Assembly to provide for it. Article I, § 3 provides:
 The General Assembly of Maryland shall have power to provide by suitable enactment for voting by qualified voters of the State of Maryland who are absent at the time of any election in which they are entitled to vote and for voting by other qualified voters who are unable to vote personally and for the manner in which and the time and place at which such absent voters may vote, and for the canvass and return of their votes.
The Court of Appeals has referred to absentee voting as a "special privilege" accorded by the Legislature which is "not shared by other voters — the privilege of having their vote count even though received by the election officials after the polls have closed." Lamb v.Hammond, 308 Md. 286, 309-10, 518 A.2d 1057 (1987).
B. Implementation of Absentee Voting 1. Before 2006
The State election law has made provision for absentee voting since 1918[2] and was most recently amended in 2006.[3] The General Assembly has directed the State Board of Elections ("SBE") to establish guidelines for the administration of absentee voting by the local boards of election within the statutory parameters. Annotated Code of Maryland, Election Law Article ("EL"), § 9-303. For that purpose, the SBE has developed a number of forms, including an application for the voter to complete and return, an oath to be completed with the absentee ballot itself, and a certificate of a person assisting the absentee voter.[4]See, e.g., COM AR 33.11.02.02 (providing that an application for an absentee ballot is to be made to a local board on a form prescribed by SBE or provided under federal law).
Before the 2006 statutory amendment, an individual applying for an absentee ballot could vote absentee only for one of the six reasons listed in the statute: absence on election day from the county in which the voter was registered; inability to go to the polling place because of accident, illness, or physical disability; confinement in an institution; death or serious illness in the voter's immediate family; student status; and absence because of employment by the State Board or local board. See former EL § 9-304(a) (2003); see also EL § 10-102. The statute also allowed a voter to vote absentee if authorized under federal law. EL § 9-304(b).[5]
An individual applying for an absentee ballot was required to certify that he or she was qualified to cast an absentee ballot for one or more of the statutory reasons. See EL § 9-305 (2003).[6] The application read in pertinent part:
 To qualify for an absentee ballot, you must certify by your signature that one or more of the following statements is or will be true. I am unable to go to the polls, because on election day:
 1. I may be absent from my county of registration.
 2. I am suffering from an accident, illness, or physical disability.
 3. I am confined in or restricted to an institution.
 4. I am attending to a death or serious illness in my family.
 5. I have academic obligations at an institution of higher education outside my precinct, but within my county of registration.
 6. I am employed by the Board of Elections and must be absent from the precinct in which I am registered.
 7. I am age 65 or older and my polling place is inaccessible.
After receiving and completing the absentee ballot, the voter was to return it in a ballot envelope containing an oath completed by the voter. EL § 9-310(c). That oath reiterated that the voter satisfied the statutory requirements for absentee voting. It stated:
 Under penalty of perjury, I hereby swear (or affirm) that I am qualified to vote in the election as stated in my absentee ballot application; that I have reason to believe that I will be unable to vote in person on election day and am entitled to vote by absentee ballot under Maryland election laws or the Uniformed and Overseas Citizens Absentee Voting Act; and that I have not voted and do not intend to vote elsewhere in this election. I voted the enclosed ballot and mailed it no later than the day before the election.
 2. 2006 Legislation
In 2006, the General Assembly substantially rewrote the laws governing absentee ballots. Chapter 6, Laws of Maryland 2006.[7] The bill was entitled "Absentee Voting on Demand" and was understood to dispense with the eligibility requirements for using an absentee ballot. See Fiscal and Policy Note to House Bill 622 (February 15, 2005). In particular, it eliminated the specific list of reasons for voting absentee; nor did it require a voter to give any reason in the application for voting absentee. See EL § 9-305 (2003, 2006 Cum. Supp.). As amended, EL § 9-304
simply stated that "[a]n individual may vote by absentee ballot except to the extent preempted under an applicable federal law."
Consistent with the understanding of the statutory modifications, SBE revised the absentee ballot application to delete the list of specific reasons for voting absentee. The voter was no longer required to certify that he or she would be unable to go to the polls on election day. SBE also developed the current version of the absentee ballot oath, which requires only that the voter swear or affirm that he or she is "qualified to vote in the election, and . . . [has] not voted and [does] not intend to vote elsewhere in this election."
C. The Capozzi Decision
In 2006, the General Assembly enacted, over the Governor's vetoes, amendments to the State election law that authorized early voting — i.e., a voter could vote at specified polling places, not necessarily in the voter's own district, for a specified period in advance of election day without satisfying any special criteria. Chapters 5, 61, Laws of Maryland 2006, codified at EL § 10-301.1.[8] The legislation "was intended to give Maryland voters a second alternative to in-person balloting, absentee voting being the other." Capozzi, 396 Md. at 64.
The early voting law was challenged in court by some individual voters who argued that it violated various State constitutional provisions. Because of the impending election, the case was expedited and, on August 25, 2006, the Court of Appeals affirmed a circuit court order that declared the early voting law unconstitutional and void. Lamone v.Capozzi, 394 Md. 305, 905 A.2d 841 (2006). The Court did not issue an opinion at that time and thus, it was not clear what, if any, implications the decision might have for how the State conducts absentee balloting. On December 11, 2006, the Court issued an opinion explaining the reasoning for its decision. Lamone v. Capozzi, 396 Md. 53,912 A.2d 674 (2006). In our view, that reasoning affects the implementation of the absentee ballot law.
In explaining its decision, the Court of Appeals emphasized the importance of the plain language principle of constitutional interpretation. Capozzi, 396 Md. at 72-73. The Court held that the provision of the early voting law authorizing voters to cast ballots during the week before election day "is clearly inconsistent with the words of, and the plain meaning of Article XV, § 7 and the other constitutional provisions that designate the `Tuesday next after the first Monday of November,' as the date of the general election."Id. at 76. The Court read § 7 to require that "the election shall be held on a specific day . . . [and] any statute that allows for a ballot to be cast before the prescribed day must be in derogation of the Constitution." Id. at 83 (emphasis in original).
The Court also narrowly interpreted the language of Article I, § 1 that states that a voter "is entitled to vote in the ward or election district in which he resides. . . ." Noting that the early voting law would enable an individual to vote outside of the voter's district or ward, the Court held that the statute violated Article I, § 1, because "[w]e view the language in Article I, § 1, as a mandatory requirement, not as a mere `entitlement,' capable of being waived." Id.
at 85-86.[9]
Finally, the Court held that early voting is not a form of absentee voting authorized by Article I, § 3. It stated that "Article I, § 3 clearly indicates that the inability to vote personally applies to `absent' voters, not those who find the voting day to be inconvenient."Id. at 90-91.
D. Pending Constitutional Amendment Concerning Absentee Voting
In response to the Capozzi decision, the General Assembly in its 2007 session passed a constitutional amendment that would authorize the Legislature to provide for early voting as an alternative way of casting ballots in Maryland. Chapter 513, Laws of Maryland 2007. Under the proposed amendment, Article I, § 3 would be amended as follows[10]:
 (A) The General Assembly [of Maryland] shall have THE power to provide by suitable enactment for voting by qualified voters of the State of Maryland who are absent at the time of any election in which they are entitled to vote [and], for voting by other qualified voters who are unable to vote personally, OR FOR VOTING BY QUALIFIED VOTERS WHO MIGHT OTHERWISE CHOOSE TO VOTE BY ABSENTEE BALLOT, and for the manner in which and the time and place at which such [absent] voters may vote, and for the canvass and return of their votes.
 (B) THE GENERAL ASSEMBLY SHALL HAVE THE POWER TO PROVIDE BY SUITABLE ENACTMENT A PROCESS TO ALLOW QUALIFIED VOTERS TO VOTE AT POLLING PLACES IN OR OUTSIDE THEIR ELECTION DISTRICTS OR WARDS OR, DURING THE TWO WEEKS IMMEDIATELY PRECEDING AN ELECTION, ON NO MORE THAN 10 OTHER DAYS PRIOR TO THE DATES SPECIFIED IN THIS CONSTITUTION.
The proposed amendment thus allows for absentee voting not only by voters who are absent or "unable to vote personally," but also by any voter who chooses to do so. The proposed amendment will be submitted to the voters for ratification at the 2008 general election.[11]
 II Analysis
You have asked whether the current absentee ballot oath should be changed in light of the Capozzi decision. In our view, the absentee ballot forms should be revised to reflect the constitutional limitations indicated in Capozzi.
As outlined in Part I above, the current oath authorized by SBE requires only that the voter certify that he or she is qualified to vote and has not, and will not, cast more than one ballot in the election. The current application does not require that the voter provide any reason for casting an absentee ballot or even confirm that the voter will be absent or unable to vote personally on election day. TheCapozzi decision appears to require that at least the oath include such elements.
In construing Article I, § 3 in Capozzi, the Court of Appeals distinguished absence from the district or other inability to vote personally from mere inconvenience. The State defendants had argued that the phrase "unable to vote personally" in Article I, § 3 applies to "anyone who finds the voting time to be `inconvenient' . . . due to work hours, family obligations, and other similar reasons."[12]396 Md. at 90. The Court rejected that argument, holding that "the inability to vote personally applies to `absent' voters, not those who find the voting day to be inconvenient." Id. at 90-91. At the same time, the Court acknowledged that a certain degree of inconvenience may make an individual absent and thus eligible to cast an absentee ballot. "If the inconvenience is so great as to render them `absent' and prevent them from voting on the election day, these individuals can vote using an absentee ballot." Id. at 91. How ever, the C ourt did not elaborate on what degree of inconvenience must be present for an individual to be considered "absent" and therefore eligible to vote an absentee ballot. In any event, it appears clear that, in the Court's view, Article I, § 3 does not authorize an individual to vote absentee for any reason at all.
Although the issue of absentee voting was before the Court only as it related to early voting, the Court's holding was based on a rejection of the idea that an individual may vote absentee for any reason and a recognition that Article I, § 3 limits the circumstances in which an individual may cast an absentee ballot. In our view, the absentee ballot oath must reflect those limits.
A voter who seeks an absentee ballot out of personal preference to vote in that manner — or for some other reason unrelated to absence or personal inability to vote in person on election day — could apply for a ballot and truthfully ascribe to the current version of the oath and yet, under the reading of Article I, § 3 in Capozzi, would not be eligible to cast a absentee ballot. In light of the Court's construction of Article I, § 3, this oath should not be used.
If the current absentee ballot forms based on the 2006 amendment of EL § 9-304 are constitutionally deficient, what should be used in their place? Should SBE revert to the prior forms for the absentee ballot application and oath that referenced the several reasons allowed for absentee voting under the former version of EL § 9-304?
In our opinion, the SBE should not revert to the old version of the application or a version of the oath that references the specific reasons in the former version of EL § 9-304. In the 2006 amendment of EL § 9-304 the Legislature made clear that it intended to make absentee voting available to the full extent permitted by the State Constitution by eliminating the specific reasons for absence or inability to vote in person that restricted the exercise of the absentee ballot under the former statute. SBE must give effect to that legislative intent in carrying out the statute, subject to any constitutional constraints.
The amended version of EL § 9-304 states that an individual "may vote by absentee ballot except to the extent preempted under federal law." Although that language was thought to authorize "on demand" absentee voting, the reference to voting by absentee ballot must be interpreted in accordance with the constitutional meaning of absentee voting.See Koshko v. Haining, 398 Md. 404, 425-28, 921 A.2d 171 (2007) (Court would read into grandparent visitation statute a presumption favoring parental decisions in order to save the statute from invalidation on constitutional grounds). The Court of Appeals' opinion inCapozzi rejects the proposition that, under the current language of Article I, § 3, the Legislature may permit absentee voting by individuals who are neither absent nor unable to vote in person. TheCapozzi opinion indicates that the amended version of the statute would go beyond the constitutional bounds if it is construed to authorize absentee ballots "on demand." However, neither Capozzi nor any other court decision has overturned the amended version of EL § 9-304. In our view, SBE must effectuate the legislative intent expressed in the 2006 amendments within the constitutional bounds indicated inCapozzi.
An appropriate way to do this would be for the absentee ballot forms to set forth the prerequisite for absentee voting in language that mirrors that of Article I, § 3; in the oath, the voter would certify that he or she satisfies that condition. In other words, the voter should swear or affirm that the voter will be absent or will be unable to vote in person on election day.[13]
If the pending constitutional amendment of Article I, § 3 is ratified in 2008, any constitutional concerns about "on demand" absentee voting under EL § 9-304 will be resolved and that statute may be given the full effect that was originally intended. See 74 Opinions of the AttorneyGeneral 19, 32-33 (1989) (unconstitutional statute that is not repealed is merely suspended; if basis for invalidity is removed, it becomes fully effective); 1A Singer, Statutes and Statutory Construction § 22:4 (6th ed. rev. 2002) (unconstitutional statute may be validated by constitutional amendment). SBE could then revert to the current form of oath for absentee ballots or use any other form consistent with EL § 9-304 or any applicable statute.
If the proposed constitutional amendment is not ratified in 2008, we recommend that the Legislature revisit EL § 9-304 in light ofCapozzi.
 III Conclusion
For the reasons stated above, the absentee ballot oath should track the language of Article I, § 3 — that is, the voter should be required to swear or affirm that he or she will be absent or will be unable to vote in person on election day. If an amendment of Article I, § 3 passed by the General Assembly at its 2007 session is ratified by the voters, the absentee ballot forms should be amended to track the amended provision or any legislation governing absentee ballots consistent with that provision.
Douglas F. Gansler Attorney General
Mark J. Davis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The 1864 Constitution permitted absentee voting by soldiers fighting for the Union in the Civil War. However, that authorization was omitted when the current Constitution was adopted in 1867. The Constitution was amended in 1918 to permit the General Assembly to allow absentee voting by members of the armed forces. Chapter 20, Laws of Maryland 1918, ratified November 5, 1918. Thirty-five years later, that provision was expanded to authorize absentee voting by any voter who would be absent from his or her election district on election day. Chapter 480, Laws of Maryland 1953, ratified November 2, 1954. A few years later, the provision was expanded to cover voters who would be in the district, but hospitalized or bedridden on election day. Chapter 100, Laws of Maryland 1956, ratified November 6, 1956. Twenty years later, the provision was amended to its current form — which simply provides that absentee voting may be made available to any voter who is "absent at the time of any election" or "unable to vote personally." Chapter 881, Laws of Maryland 1974, ratified November 5, 1974. (A subsequent amendment recodified the provision from its original enactment as Article I, § 1A, to Article I, § 3. Chapter 681, Laws of Maryland 1977, ratified November 7, 1978).
As explained later in the text, the Legislature recently approved an amendment of Article I, § 3, which will be presented to the voters for ratification in the 2008 election.
[2] Chapter 78, Laws of Maryland 1918.
[3] Chapter 6, Laws of Maryland 2006.
[4] See EL § 9-308 (providing that a person who by reason of disability or inability to read or write needs assistance in casting ballot may be assisted by an individual who executes a certificate prescribed by the SBE).
[5] For example, federal law authorizes absentee voting by members of the uniformed services and other voters who are out of the country.See 42 U.S.C. § 1973ff et seq. (Uniformed and Overseas Citizens Absentee Voting Act).
[6] At one time, the application for an absentee ballot had to contain an affidavit that provided the information under penalty of perjury. The General Assembly eliminated that requirement in 1996. Chapter 2, Laws of Maryland 1996. See Pelagatti v. Bd. of Supervisors of CalvertCounty, 343 Md. 425, 440 n. 14, 682 A.2d 237 (1996).
[7] This law, which was passed by the Legislature as House Bill 622 in 2005, was vetoed by the Governor on policy grounds. See Veto Letter of Governor Robert L. Ehrlich, Jr. concerning House Bill 622 (May 20, 2005), 2005 Vetoed Bills and Messages at pp. 636-37. At its next session, the General Assembly overrode that veto.
[8] The Legislature originally passed the bill in 2005 as Senate Bill 478. The Governor vetoed the bill. See Veto Letter of Governor Robert L. Ehrlich, Jr. concerning Senate Bill 478 (May 20, 2005), 2005 Vetoed Bills and Messages at pp. 157-58. The veto was overridden and the bill became Chapter 5 of the 2006 session. During that same session, the original early voting legislation was amended, and the amendment was also vetoed by the Governor. See Veto Letter of Governor Robert L. Ehrlich, Jr. concerning House Bill 1368 (May 20, 2005), 2006 Vetoed Bills and Messages at pp. 890-93. That veto was also overridden by the Legislature. Chapter 61, Laws of Maryland 2006.
[9] The Court also held that primary elections are included within the meaning of "at all elections to be held in this State" in Article I, § 1. 396 Md. at 89. Thus, its holdings concerning early voting also extended to primary elections.
[10] Additions made by the amendment are indicated by capitals; deletions are indicated by brackets.
[11] In addition, Article I, § 1 of the State Constitution would be amended as follows:
 All elections shall be by ballot. [Every] EXCEPT AS PROVIDED IN SECTION 3 OF THIS ARTICLE, EVERY citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which [he] THE CITIZEN resides at all elections to be held in this State. A person once entitled to vote in any election district, shall be entitled to vote there until [he] THE PERSON shall have acquired a residence in another election district of ward in this State.
[12] The State defendants reasoned that early voting was authorized by Article I, § 3 because it allows those inconvenienced individuals who are "unable to vote personally" to vote earlier at a more convenient time. Id.
[13] The pre-2006 version of the oath may suffice in this regard.See Part I above. *Page 92